## JOHN H. ROBINSON, EXR. v. ORAMEL HUTCHINSON AND WIFE.

*Will. Capacity of testator. Previous and subsequent declarations of testator. Admissibility.*

The declarations of the testator, made about the time of the execution of the will, tending to show importunity and undue influence, and also to show the state of the mind of testator, are admissible.

But such declarations are not admissible to prove the fact stated.

Weakness of mind arising from advanced age, disease and family affliction, exists in the mind itself, and such weakness of mind, at the time of making the will, may be inferred from weakness subsequent, therefore declarations of the testator soon after making the will, and having reference to it, and the disposition of his property, under such a state of facts, are admissible.

Testimony of this character must be limited to proof of weakness of mind, at the time of making the will, and is inadmissible as proof of the fact stated by the testator.

THIS was an appeal from a decree of the court of probate, for the district of Chittenden, admitting to probate the alleged last will and testament of Mrs. Nancy Robinson, deceased.

At the September Term of the County Court—POLAND, J., presiding—the case was tried by jury, and a verdict returned in favor of the will.

On the trial, it was claimed by the appellants that the testatrix was a person of advanced age, and infirm health, and that at the time of the execution of the will she had become, in consequence of disease and domestic affliction, greatly broken and enfeebled in mind and capacity. That her sons, John H. and Franklin Robinson, had acquired her unbounded confidence, and exercised a great degree of influence over her, having for some years managed all her business affairs. That on the occasion of the execution of the will, the testatrix was taken by her sons on a visit to a distant relative, in the town of Weathersfield, and that on the day after her arrival there, Franklin Robinson took her into a room apart, and remained with her alone during the whole day, and there drew up the will, which was executed that evening, and carried away by said Franklin.

That the will was procured to be executed by the undue influence and control of said Franklin Robinson, who was largely benefitted by its provisions, and to the exclusion, in a great part, of his sister, Mrs. Hutchinson, the appellant; and that the testatrix was wilfully imposed upon by said Franklin as to the character and effect of the provisions of the will.

In support of these facts and tending to prove them, a large amount of evidence was produced, a part of which consisted of the depositions of Thomas Robinson, Lucy French, Attee Walker, Phebe Upham, Maria Upham, Drusilla Upham, and Lydia Burroughs.

To the admission of various portions of these depositions the appellee objected, which consisted for the most part, of the declarations of the testatrix, made at and near the time of the execution of the said will. That part of the deposition of the said Thomas Robinson, so objected to, was as follows :

" On her return from there to Mrs. Hutchinson's she came to " my house, and observed to me that John H. and Franklin, were " present at the making of the will, and that Franklin drew the " will according to their wishes, to wit, (John H. and Franklin,) " and that her head was so confused that she did not know what "her will contained, and that John H. had carried it off to Bur- "lington, and that she felt very anxious to know how it read. " *Question*—Will you state what Mrs. Robinson said in your hear- "ing with regard to her son, Franklin, obtaining certain articles

"of clothing from her at Burlington, in August, A. D., 1847, just "before they came to Chester? *Answer*—She said Franklin had "over persuaded her to give up certain articles of clothing to him, "that he had carried them to New York, and that she was extreme- "ly sorry and wished them back."

Lucy French testified in her deposition, that, "On the fourth of "July, 1848, I spent the day with her, Mr. Hutchinson and wife "being absent from home. She was as bright as she had been "previously and perfectly rational and composed when I got to "Mr. Hutchinson's. In the course of the forenoon, she introduc- "ed the subject of her will, (I asked her no questions,) and told "me that Franklin teased her to go to Weathersfield and make a "visit. She said she should not have made her will at that time, "had not Franklin teased her so, and wanted it made before he "went back.

"She said Franklin would not give her any peace till she had "made it. She said she hoped Nancy would not feel bad to think "they went there and made it, for she calculated she would fare as "well as the rest of them. She said, that at the time it was made, "her head was so confused, she did not know what she was about. "She did not say in particular who made it, as I recollect. I tried "to turn the conversation for fear she would get excited, but she "was not excited at that time," &c.

The portions in the other depositions objected to, were of the same character as that above cited; and the same was rejected by the court.

It was claimed, on the part of the appellants, to be admissible, as well for the purpose of proving the facts therein stated, and her previously existing and expressed intentions as to the disposi- tion of her property, as of showing the state and condition of the mind and capacity of the testatrix, at the time when the de- clarations were made, and at the times to which they referred, as tending to show the condition of her mind at the time the will was executed, and generally for the purpose of establishing the facts relied on, as before stated, to invalidate the will.

The appellants also called as a witness, Mrs. Prentiss, who tes- tified to the mental condition of the testatrix, in the summer of 1847, (a few months before the execution of the will,) and to the then existing effect apparently produced upon her mind and health,

by the death of testatrix's daughter, Elizabeth, in September, 1846; and also proposed to show by the witness, what the testatrix told her of the immediate effect of the death of the daughter on the mind and health of the testatrix, at the time and soon after it occurred.

To the admission of this last evidence the appellee also objected, and it was excluded by the court. The charge of the court to the jury was not objected to by the appellants; but to the ruling of the court in rejecting the evidence referred to, the appellants excepted.

*E. J. Phelps* for the defendants.

The evidence rejected should have been admitted.

I. It tended to show weakness of mind in the testatrix, at the time the will was executed.

This fact was material, and can never be proved except by the conversation and conduct of the party.

All the evidence referred to a period very near the execution of the will. There is no objection on principle to such evidence. It is constantly received in practice. And even the authorities that reject the statements of a testator as evidence of *the facts related*, admit them for the purpose of showing *the state of mind*. *Comstock* v. *Hadlyme*, 8 Con. 254. *Kinne* v. *Kinne et al.*, 9 Con. 102. *McTaggot* v. *Thompson*, 14 Penn. 149. *Irish* v. *Irish* 8 Sergt. & Rawle 573. 1 Cowen & Hill's Notes to Phillips' Ev. p. 646, 647. *Betts* v. *Jackson*, 6 Wendall, 173. *Reed, Exr.* v. *Reed*, 1 Hawks, 247. *Howell* v. *Barden*, 3 Dev. 642. *Nelson* v. *Oldfield*, 2 Vt. 76.

In almost all the cases of disputed wills in the Eng. Ec. Rep. evidence of this character was received without question.

When the present case was formerly before the Supreme Court, this testimony was conceded to be admissible for the purpose for which it was claimed. The only question was as to its competency to prove *the facts stated by the testatrix*. And the point decided was, that declarations of the testatrix *amounting to a revocation*, were not admissible.

II. The testimony of Mrs. Prentiss, and those passages in the depositions, that refer to the statements made by the testatrix, as to her bodily health and the condition of her mind, are further admissible as proving the fact therein stated.

XXVI    4

Affection of the mind generally results from bodily infirmity. And such infirmity cannot usually be shown except by the statements of the party.

These statements are not analogous to declarations made by a person in his own favor. It is absurd to say that a testator has an interest to defeat his own will; and more absurd to suppose that he would seek to accomplish that object by making representations in regard to his health, that would furnish circumstantial evidence of insanity. The statements of a party as to his bodily symptoms, at the time of their existence, are admissible as evidence even in his own favor.

III. Those passages in the depositions which relate to the expressed intentions of the testatrix, both before and after the execution of the will, in regard to the disposition of her property, are further admissible to show that the will, as drawn, is inconsistent with those intentions.

In all cases where capacity or free agency in making a will is in question, the fact that the will does not compare with expressed intentions is not only admissible, but is regarded as of the highest importance. 1 Eng. Ec. Rep. 67, 88, 116. 4 Eng. Ec. Rep. 650, 113. 3 Eng. Ec. Rep. 95.

IV. Those passages in the depositions, which contain statements of the testatrix in regard to the manner in which Franklin Robinson had previously obtained certain property from her, and the effect of those transactions upon her testamentary intentions toward her daughter, (the defendant,) are also admissible upon two grounds in addition to those urged.

*First,* as showing the facts so stated.

*Second,* as showing the undue influence which Franklin had acquired over her feeble mind previous to the execution of the will. *Ramble* v. *Tryon,* 7 Sergt. & Rawle, 90.

V. The passage in Mrs. Burrough's deposition, in which she states that she mentioned the facts to which she testifies to another person, viz: "I recollect of saying to our people, after Mrs. Robinson left, that Aunt had failed since I last saw her, as to her faculties, and did not appear to be as well," being at the time they occurred, is admissible not as evidence of the facts, but as showing the attention of the witness to have been drawn to the subject at the time, and the manner in which it was fixed in her recollection. This is every day's practice.

Robinson Exr. *v.* Hutchinson et ux.

*L. E. Chittenden* and *G. F. Edmunds* for plaintiff.

I. The testimony objected to, and excluded by the court below, had no legal tendency to prove that the testatrix, *at the time she made the statement testified to*, was either of unsound mind, or weak and enfeebled intellect, but the contrary. These statements are all in reference to antecedent facts, which the appellants claimed to exist.

The rule as to declarations of the testatrix, made after the execution of the will, as established by this court, in this case, and supported by the best considered cases, is this : When the declarations have a tendency from their intrinsic nature, to show that the mind of the testatrix, at the time she made the will, was unsound, imbecile, or in such a condition as to be subject to the exercise of undue influence, they are admissible for that purpose only. They are never evidence of their own truth. *Jackson* v. *Kniffen*, 2 J. R. 31. *Comstock* v. *Hadlyme*, 8 Con. 254. *Stevens* v. *Van Cleve*, 4 Wash. C. C. R. 262. Cowen and Hill's notes to Phil. Ev. Part 1 p. 648. *Provis* v. *Read*, 15 E. C. L. 430. *Moritz* v. *Brough*, 16 S. & R. 403.

The only ground upon which they are admissible to this limited extent, is, that in some cases, evidence establishing imbecility, &c., at the time of the declarations, may have some tendency to show that the state of the testator's mind was similar at the time of the execution of the will.

The inference from the declarations, is to be drawn through the state of mind at the time they were made, and not directly from the declarations themselves, as such.

The jury may in some cases, infer imbecility, &c., at the time of the execution of the will, from imbecility subsequent; and infer imbecility, &c., subsequent, from declarations containing intrinsic evidence of it. But it is only in cases where the imbecility is shown to be of a continuously permanent nature, existing in the substance of the mind itself, that the subsequent mental condition ever has any tendency to prove that such condition existed at any time prior. Such is not this case. Here the difficulty is not in the mind itself, but in the degree of influence exercised over it ; and the weakness is only material as affecting the degree of influence necessary to the result. In such instance there is no safe rule upon which declarations of the character of those in question, can be received.

II. Were the declarations of the testatrix, made *after* the execution of the will, and not accompanying any *act,* evidence, to prove *directly* the state of imbecility, &c., at the time of the execution of the will ; which was the point in issue.

We insist that they were not evidence of such fact.

They contradict her written declaration, (the will,) upon the same point, and are mere hearsay. See cases cited *ante.*

You cannot say that the testatrix was imbecile, &c., at the time of the execution of the will, because she afterwards so declared, any more than you can say that the witnesses did not sign in her presence, or that a wrong intent was expressed, because she now asserts that such was the fact.

Her declarations of this character cannot be distinguished from those of any other person equally cognizant of the fact, for they are not declarations of a party against her interest, *and thus facts in themselves.*

They are no more evidence as to the *factum,* than as to the construction; *Doe* v. *Palmer,* 6 E. C. L. & E. R. 155. *Wetherhead* v. *Baskerville,* 11 How. 330.

Such evidence directly contravenes the statute of wills. It contains and encourages the misrepresentations, uncertainties, and perjuries, which it is the purpose and spirit of the statute to avoid; and it operates as a parol revocation of a will, executed with all the formalities required by law. *Smith* v. *Fenner,* 1 Gall. 170. *Dan* v. *Brown,* 4 Cow. 383. *Brown* v. *Betts,* 6 Cow. 377, and cases cited *ante.*

III. The declarations objected to, were offered by the appellants, as the exceptions show, for the purpose of showing the following facts collectively, viz : the exercise, *in fact,* of duress, or undue influence, and the imbecility, &c., of the testatrix's mind.

In any point of view they were not competent for *the purpose,* or to the *extent* proposed, as tending to show all these facts. The decision of the court was, that the evidence was not admissible for the purposes for which it was offered. This was correct. When evidence is offered to show a multiplicity of facts, the court is not bound to sever and divide the proposition in order to determine whether there is not some one fact embraced in it, which the evidence has a legal tendency to establish.

The opinion of the court was delivered by

ISHAM, J. The probate of this will is resisted on the ground, that it was obtained from the testatrix, by the influence and undue importunity of her sons, John H. and Franklin Robinson. The will was drawn by Franklin Robinson, who was largely benefitted by its provisions, to the exclusion in a great degree of his sister, Mrs. Hutchinson. It is insisted, that the testatrix was imposed upon by him, at the time of its execution, as to the character and effect of its provisions; and that the will was obtained, when the testatrix was greatly enfeebled in mind, not only by infirmities usually attendant upon persons of her advanced age, but by various bodily diseases, and a domestic affliction in the death of her daughter. It is also insisted, that she was unable to overcome those influences then exerted upon her mind; and that her will was obtained, thereby making a disposition of her property different from what she then desired, and contrary to her former expressed determination. In other words, it is said, that the instrument expresses the will and desire of Franklin Robinson, rather than that of the testatrix.

In cases of this character, the presumption is in favor of the will, and of the capacity of the person making it. It is therefore incumbent on the party attempting to defeat the will, to show affirmatively, the existence of any disability. 1 Swinb. on Wills, 119. Shelford on Lunacy and Persons of Unsound Mind, 274. For that purpose, and in proof of the issue in the case, the declarations of the testatrix made shortly previous, and subsequent to the time of the execution of the will, were offered in evidence by the appellants, and were rejected by the court. It is insisted that her declarations were admissible for the purpose of proving the *fact stated, that such undue influence and importunity was exercised;* and also to prove the weak and enfeebled state of her mind, at the time of the execution of the will.

In relation to the admissibility of her declarations to prove the fact that such importunity and influence were exerted, we must consider that matter as settled by a former decision of this court, in this case, in which her declarations were held inadmissible for that purpose. That decision is evidently sustained by the authorities. *Provis* v. *Reed*, 5 Bing. 435. *Smith* v. *Fenner*, 1 Gall. R. 170. *Jackson* v. *Kniffen*, 2 Johns. 31. *Comstock* v. *Hadlyme*, 8 Con. 263.

The authorities, however, fully sustain the position, that those declarations are admissible in evidence, for the purpose of showing the state and condition of her mind at the time of the execution of the will; that it was in that weak and enfeebled state, in which she was incapable of resisting the importunity and influence, which it is claimed, was exerted upon her. That evidence should not have been entirely rejected from the consideration of the jury. On this subject, it is proper to observe, that the object of the testimony was not to show imbecility, or the want of a disposing mind; but to show a weakness of mind, which rendered its free agency easily overcome by influences from that source; and to lay the foundation for the introduction of other and more direct testimony, showing that such importunity and influence was in fact exerted on that occasion, which may be sufficient to avoid it.

In the case of *Nelson* v *Oldfield,* 2 Vt. 76, the declarations of the testatrix were admitted in evidence, when made after the will was executed, in which she complained of having been circumvented in making the will, and of the injury she had done her mother and sisters. On that testimony, the court of chancery refused its aid relative to a trust estate, though she had expressly refused to revoke the will. The court in that case gave effect to the testimony, and thereby defeated the operation of the will itself. It is a much stronger case than this. In *Comstock* v. *Hadlyme,* 8 Con. 263, declarations of the testatrix, made about the time of executing the will, tending to show importunity and undue influence, were admitted to show her state of mind, though not to prove the fact stated. That testimony was received at the circuit, and a new trial was refused. The same doctrine was afterwards sustained in the case of *Kinne* v. *Kinne,* 9 Con. 105. This doctrine is sustained in Pennsylvania. In *McTaggart* v. *Thompson,* 14 Penn. 159, the declarations of the testator, "that he had ruined his family, had been deceived and imposed upon by persons who had procured him to have his will made," were admitted in evidence to show his weakness of mind at the time of making his will. The same rule was adopted in the cases of *Rambler* v. *Tryon,* 7 S. & Rawle 94. *Chess* v. *Chess,* 1 Penn. 32, in which the court observed, "that the declarations of a testator although after the execution of the will, are evidence of weakness of mind." *Irish* v. *Irish,* 8 S. & R. 373. In the case of *Reed Exr.* v. *Reed,*

1 Hawks. (N. Car. R.) 247, 268–9, this subject was examined with great research, and such declarations were held admissible to defeat the will itself. Without adopting the doctrine of the case to that extent, it is a strong case, sustaining the admissibility of the testimony, for the purpose for which it was offered in this case. In that case the court observed, " that to reject the declarations of the only person having a vested interest, and who was interested, to declare the truth, involves almost an absurdity. It was not necessary that the declarations be a part of the *res gestae,* for whether they accompany an act or not, whether made long before, or long after making the will, is entirely immaterial, as to their competency. Those circumstances only go to their weight, or credit with the tribunal, which is to try the fact." The same doctrine was afterwards sustained in the case of *Howell* v. *Barden,* 3 Dev. 442, 444 to 451. The true rule and distinction on this subject, we apprehend, is given in 2 Phil. Evid. in Notes by Cowen & Hill, 648, in which the editor remarks, " that the difficulty seems to lie in acting upon the distinction between declarations going to develop the operations of the mind, and those containing the assertion merely of a distinct fact. The former are admissible, the latter not."

We do not perceive any serious objection to the admission of this testimony in this case, under that limitation, when the declarations were made so near the time of the execution of the will, that a reasonable conclusion, may be drawn as to the state of mind of the testatrix at the time the will was executed. Weakness of mind, arising from advanced age, in connection with causes suggested in this case, is progressive and permanent in its character. It exists in the mind itself, and therefore it is, that weakness of mind, at the time of making the will, may be inferred from weakness subsequent, as much so, as imbecility of mind under similar circumstances; and particularly is the testimony important, in showing the extent and character of the influence, which the person drawing the will, had over the mind of the testatrix.

Upon these principles, and under that limitation, a portion of the testimony of Thomas Robinson, Lucy French, Mrs. Prentiss and Attee Walker, stating the declarations of the testatrix, soon after making the will, and having reference to it and the disposition of her property, should have been received. It is for the ju-

ry to say, what weight is to be given them, and how far they tend to show the condition and state of mind of the testatrix, when she executed the will. It has been properly observed, that the evidence is dangerous in its character, and is to be received with great caution. It must be strictly confined to proof of weakness of mind, at the time of making the will, and not to proof of the fact stated, that such influence and importunity was exercised on that occasion.

The judgment of the County Court is reversed, and the case remanded.